## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS
## EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| R.R., II, a minor, by GLORIA WRIGHT, individually as guardian and next friend of R.R., II; AVIS STEWART; and DEXTER MARSHALL; | ) ) ) ) ) ) | |
|                 Plaintiffs, | ) | Case No. 3:13-cv-686-MJR-SCW |
| v. | ) ) | |
| ABBOTT LABORATORIES, INC., | ) ) | |
|                 Defendant. | ) | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Come now PLAINTIFFS, individual, and minor by his guardian and next friend of Plaintiff, by and through their undersigned attorneys, for their Complaint against Defendant Abbott Laboratories, Inc. ("Abbott" or "Defendant") relative to its sale and distribution and manufacturing of Depakote and Depakote ER products ("Depakote") in the United States, and in support thereof would show the following:

## PARTIES AND JURISDICTION

### Plaintiffs

1.      Plaintiffs R.R., II, a minor, by Gloria Wright, individually as guardian and next friend of R.R., II, are citizens and residents of Columbia, South Carolina. Plaintiff G.M. was born in 1997. Plaintiff R.R., II was prescribed Depakote and ingested the drug in accordance with the prescribing instructions and suffered harm therefrom. Plaintiff R.R., II avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the true danger associated with its use.

2.     The foregoing Plaintiffs allege an amount in controversy in excess of $75,000.00, exclusive of interest and costs.

3.     Hereinafter, the injured child listed above will be referred to as "Plaintiff," or "Injured Child."

4.     Plaintiff Avis Stewart is a citizen and resident of Ladson, South Carolina. Plaintiff Avis Stewart was prescribed Depakote and ingested the drug in accordance with the prescribing instructions and suffered harm therefrom.  Plaintiff Avis Stewart avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the true danger associated with its use.

5.     The foregoing Plaintiff alleges an amount in controversy in excess of $75,000.00, exclusive of interest and costs.

6.     Plaintiff Dexter Marshall is a citizen and resident of Belleville, Illinois.    Plaintiff Dexter Marshall was prescribed and purchased Depakote in Belleville, Illinois.  He ingested the drug in accordance with the prescribing instructions and suffered harm therefrom.  Plaintiff Dexter Marshall avers that Defendant's Depakote was defectively designed, inadequately tested, dangerous to human health, and lacked proper warnings as to the true danger associated with its use.

7.     The foregoing Plaintiff alleges an amount in controversy in excess of $75,000.00, exclusive of interest and costs.

**Defendant**

8.     Defendant Abbott Laboratories, Inc. now is, and at all times relevant to this action was, a corporation organized and existing under the laws of the State of Illinois, with its principal place of business and its headquarters in the State of Illinois.  Abbott may be served by

delivering the citation to its registered agent for service, CT Corporation System, 208 So. LaSalle St., Suite 814, Chicago, IL, 60604.

9.     Abbott engaged in the business of designing, licensing, manufacturing, testing, advertising, warranting, distributing, supplying, selling, and introducing into the stream of commerce certain products known as Depakote and Depakote ER.  Abbott sold and marketed its Depakote and Depakote ER products in this District and throughout the United States.

## JURISDICTION AND VENUE

10.     This court has subject matter over this matter pursuant to 28 U.S.C. § 1332. Defendant is a resident of the state of Illinois, there is complete diversity of citizenship between Plaintiff and the Defendant, and the amount in controversy exceeds $75,000.00.

11.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and 1391(d) due to Defendant's substantial contacts to this district, including direct to consumer marketing, communication with and marketing to physicians, and the sale of Depakote and other pharmaceutical products in this district.

12.     This lawsuit seeks compensation, damages and other relief for injuries Plaintiffs have suffered as a result of Abbott's anti-convulsant drug commonly known as "Depakote."

## UNDERLYING COMMON FACTS

13.     Abbott is and at all relevant times has been engaged in the business of formulating, designing, manufacturing, licensing, testing, advertising, marketing, warranting, selling, distributing, and introducing into the stream of commerce a drug compound known as "divalproex sodium," "valproic acid," or "valproate," which Abbott has sometimes marketed under brand names such as "Depakote," "Depakote ER," "Depakene," and "Depacon." Regardless of the name under which Abbott marketed, sold, and distributed the drug, all of its

forms were and are, for all purposes relevant to Plaintiffs' claims, chemically and pharmacologically identical. For purposes of this Complaint, these various forms and names of the drug compound will all be referred to by the common brand name, "Depakote."

14. In approximately 1978, after Abbott received approval to market Depakote in the United States for treatment of certain forms of epilepsy, Abbott began marketing and placing Depakote into the stream of commerce throughout the United States. Depakote was promoted as an effective anti-epileptic drug ("AEDs").

15. Depakote as formulated, designed, manufactured, licensed, tested, advertised, marketed, warranted, sold, distributed, and introduced into the stream of commerce by Abbott was and is defective and unreasonably dangerous for its intended use.

16. As pharmaceutical research and development progressed through the 1980's and 1990's, new and better AEDs were developed and approved, which proved as effective as Depakote at controlling most seizures in most epileptic patients, but which bore far less risk of dangerous side-effects.

17. Despite this emerging scientific consensus, Abbott refused to communicate the true nature and extent of the risk in its product labeling and warnings to physicians and consumers.

18. Despite the risks, Abbott has aggressively pursued expansion of the uses for which Depakote is approved and marketed to doctors and patients. As early at the mid-1990's, Abbot implicitly and explicitly promoted Depakote to doctors, consumers and the general public for unapproved or "off-label" uses, such as for treatment of mild depression, the depressive state of bi-polar disorder, and chronic pain conditions such as migraine headaches.

19.     Abbott has promoted these off-label uses even though there are other common drugs which are as effective or more effective for treatment of those conditions, and which do not involve the severe risks. In further pursuit of market share in the pharmaceutical industry, Abbott has worked aggressively to manipulate the regulatory system and gain approval for certain of these off-label uses, in hopes of concealing within government approval the dangers of using Depakote for conditions in which its use is unnecessary.

20.     Depakote was and is a defective product, unreasonably dangerous in light of its nature and intended use. That defect existed when the product left Abbott's control and has been the proximate cause of injuries to Plaintiffs, whose injuries were caused by the use of Depakote in its intended or foreseeable manner or in the manner recommended by Abbott.

21.     Abbott knew or should have known of the dangerous condition of its product, Depakote, but failed to adequately warn or instruct physicians and consumers of the risks, dangers, and proper uses of the drug.

22.     Abbott has breached its duty of reasonable care and its express and implied warranties, and has made affirmative misrepresentations as well as misrepresentations by omission, all in connection with the design, testing, manufacture, marketing, and/or labeling of Depakote.

23.     As a direct and proximate result of the aforesaid acts of and/or omissions by the Defendant, the Plaintiffs have:

(a)     suffered severe and permanent injuries, which he will be forced to endure for the remainder of their lives;

(b)     suffered physical impairment and disfigurement;

(c)     suffered physical pain and suffering;

(d)     suffered mental pain and suffering;

(e)     suffered loss of enjoyment of life;

(f)     incurred substantial costs for medical care in the past, and will in reasonable medical probability incur substantial costs for medical care in the future;

(g)     suffered a loss of earnings and of future earning capacity; and,

(h)     incurred attorney's fees and expenses of litigation related to this action.

## EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

24.     Defendant failed to disclose a known defect and affirmatively misrepresented that Depakote was safe for its intended use.  Further, Defendant actively concealed the true risks associated with the use of Depakote.  Plaintiffs, the parents of the Injured Children, and/or the prescribing physicians had no knowledge that Defendant was engaged in the wrongdoing alleged herein.  Because of Defendant's concealment of and misrepresentations regarding the true risks associated with Depakote, Plaintiffs, the parents of the Injured Children, and/or the prescribing physicians could not have reasonably discovered Defendant's wrongdoing at any time prior to the commencement of this action.

25.     Thus, because Defendant fraudulently concealed the defective nature of Depakote and the risks associated with its use, the running of any statute of limitations has been tolled.  Likewise, Defendant is estopped from relying on any statute of limitations.

## COUNT I

### Strict Products Liability

26.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

27.     It was the duty of Abbott to manufacture, test, market, advertise, label, distribute, and sell Depakote so that it was reasonably safe for its foreseeable use.

28.     At the time Depakote left the control of Abbott and was sold, it contained one or more conditions which rendered it defective and unreasonably dangerous in light of its nature and intended use.

29.     At all times, Depakote was used in the manner intended, recommended, or reasonably foreseeable by Abbott.  There were and are no other reasonable, secondary causes of Plaintiffs' injuries and damages other than the use of Depakote.

30.     The Depakote manufactured and/or supplied by Abbott and to which Plaintiffs were exposed was defective in design, manufacture, and/or formulation in that when it left the hands of Abbott, the foreseeable risks exceeded the benefits associated with the design and/or formulation of this product.

31.     The Depakote marketed, sold, and supplied by Abbott and to which Plaintiffs were exposed was defective in its marketing and labeling in that Abbott knew or should have known of its dangers and risks, but failed to adequately warn or instruct physicians, consumers, and the general public of the nature and extent of those risks.

32.     The Depakote marketed, sold, and supplied by Abbott and to which Plaintiffs were exposed was defective in its marketing and labeling in that Abbott knew of or should have known of its dangers, as well as the means for reducing or eliminating those dangers and risks, but failed to adequately warn or instruct physicians, consumers, and the general public of those means of reducing or eliminating the risks.

33.     The Depakote marketed, sold, and supplied by Abbott was defective in marketing in that Abbott represented to the consuming public that the product was safe and had qualities that it, in fact, did not have.

34.     The Depakote manufactured and/or supplied by Abbott was defective in design and formulation in that it was more dangerous than an ordinary consumer would expect when used in its intended or reasonably foreseeable manner.

35.     The Depakote manufactured and/or distributed by Abbott was defective in that Abbott failed to adequately test this product before placing it into the stream of commerce.

36.     As a direct and proximate result of the defective condition of Depakote as manufactured by Abbott, Plaintiffs suffered injuries and damages as described, in excess of $75,000.00.

## COUNT II

### Negligence

37.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

38.     Abbott had a duty to exercise reasonable care in the design, manufacture, testing, sale, labeling and/or distribution of Depakote it placed into the stream of commerce, including a duty to assure that the product did not cause unreasonable or unnecessary injury.

39.     Abbott breached its duty of care to the Plaintiffs through its negligent acts and omissions.  Abbott did not exercise reasonable care in the warning, design, manufacture, sale, testing, labeling and/or distribution into the stream of commerce of the Depakote.

40.     Abbott was negligent in the design, manufacture, sale, testing, and/or distribution of Depakote in that it: (a) failed to use due care in designing, formulating, developing, testing,

and manufacturing Depakote so as to avoid or warn against the described risks to consumers who used Depakote; (b) placed an unsafe product into the stream of commerce; and (c) failed to discover or warn of the dangers associated with the use of Depakote despite having actual and/or constructive knowledge of such dangers.

41.     Abbott knew or should have known that Plaintiffs could foreseeably suffer injuries as a result of Abbott's failure to exercise ordinary care as described above.

42.     As a direct and proximate result of Abbott's negligence, Plaintiffs suffered injuries and damages as described, in excess of $75,000.00.

## **DAMAGES**

43.     Plaintiffs incorporate the allegations contained in the foregoing paragraphs as if fully set forth in the following paragraphs.

44.     The facts set out above demonstrate that, as a direct and proximate result of Abbott's conduct, Plaintiffs have suffered severe economic and non-economic losses and injuries for which they are entitled to recover damages in excess of $75,000.00, including without limitation the following:

      (a)    bodily injury, disfigurement, conscious pain, suffering, mental anguish, mental suffering, embarrassment, shame, loss of enjoyment of life, shortened life expectancy, loss of association, loss of earnings, loss of profits, loss of salary;

      (b)    the reasonable and necessary expenses for the medical treatment rendered to Plaintiffs in the past and that will be medically probable in the future;

      (c)    compensation for Plaintiffs' permanent mental and physical impairment;

      (d)    all other actual damages available under applicable law;

      (e)    future economic damages during the age of minority and beyond the age of 18, including lost wages of Plaintiffs;

      (f)    costs of this suit.

## PRAYER

WHEREFORE, Plaintiffs ask that Defendant Abbott Laboratories, Inc. be cited to appear and answer herein. That upon final trial, Plaintiffs have judgment against Defendant Abbott Laboratories, Inc. in excess of this Court's jurisdictional requisite for actual damages, costs of court, and any other relief that will fairly and adequately compensate for the losses herein alleged.

Respectfully submitted,

s./Christopher Cueto
Christopher Cueto, IL 06192248
Law Office of Christopher Cueto, Ltd.
7110 West Main Street
Belleville, IL 62223
Telephone:  (618) 277-1554
Facsimile:  (618) 277-0962

Robert L. Salim
SALIM-BEASLEY, LLC
1901 Texas Street
Natchitoches, LA 71457
Phone: (318) 352-5999
Fax: (318) 352-5998

**ATTORNEYS FOR PLAINTIFFS**