IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE DEPAKOTE: | ) |
| | ) |
| RHEALYN ALEXANDER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 12-CV-52-NJR-SCW |
| | ) |
| ABBOTT LABORATORIES, INC., and | ) LEAD CONSOLIDATED CASE |
| ABBVIE, INC., | ) |
| | ) |
| Defendants. | ) |

## ORDER

**ROSENSTENGEL, District Judge:**

A Status Conference was held on November 17, 2016. At that time, the Court discussed potential options for the next phase of the Depakote litigation along with several issues raised by both the parties and the Court. (*See* Docs. 692; 697; and 698). In their briefing and at the Status Conference, Defendants advocated for an extensive motions practice to address cases they believe are vulnerable to summary judgment. Plaintiffs countered that such an approach does not advance the litigation and only addresses the "low-hanging fruit." (Doc. 692, at p. 32). To advance the litigation, Plaintiffs proposed that the Court's efforts be focused on setting and preparing for joint trials involving as many as five Plaintiffs at a time. *Id.* at 6-7. The Court will issue a more detailed Order setting forth the trial plan for the next phase of the Depakote litigation in the coming weeks, however, nothing provided by the parties indicates that these two actions are mutually exclusive.

Accordingly, the Court **ORDERS** the following:

### Dispositive Motions Practice

The moratorium on dispositive motions put in place following the *Kaleta* trial is hereby lifted. The parties may file potentially dispositive motions, including summary judgment motions addressing causation, as they deem appropriate. In preparing these motions, priority should be given to motions that have the potential to impact the largest number of claims.

### Usage Records

The Court also finds that additional targeted discovery is appropriate to advance the litigation. For example, it has become apparent that a number of plaintiffs were taking generic Depakote, which is not manufactured by Defendants. It is undisputed that a number of states preclude recovery against the brand name label when the biological mother was taking the generic form of the drug manufactured by a separate Defendant. Generic valproate became available in July 2008. (Doc. 698, at p. 4). Defendants seek an Order requiring Plaintiffs with 2008 birthdays, listed in Defense Exhibit 4 (Doc. 698-4), to produce all records evidencing usage of Depakote during the relevant period. (Doc. 698, at p. 6).

Because the Court agrees with Defendants that this discovery is appropriate at this time, Plaintiffs are **ORDERED** to produce all records evidencing usage of Depakote during the relevant period of time for the individual mothers listed in Exhibit 1. The records shall be produced within **60 days** of the date of this Order.

### Additional Prescriber Depositions

Defendants also contend that the January 1, 2008 label included additional teratogenicity information from the North American Antiepileptic Drug Pregnancy Registry which rendered many of Plaintiffs' inadequacy arguments moot. (Doc. 698, at pp. 4-6). Defendants seek to depose the prescribing physician(s) for the remaining post January 1,

2008 label cases claiming that "Plaintiffs will be hard-pressed to [show that these] doctors…were not adequately warned." (Doc. 698, at p. 6). Indeed the Status Reports reveal that the more refined and robust the teratogenicity warning the narrower the path to liability. Again, for good cause shown, the parties are **ORDERED** to conduct the depositions of the prescribing physicians for the remaining post January 1, 2008 label cases. (*See* Exhibit 2).

Defendants also seek to depose an additional 100 prescribing physicians for cases where the plaintiff was born prior to 2002. The first round of prescriber depositions revealed a significant number of cases where no prescribing physician could be produced. The protracted age of the pre-2002 claims increases the likelihood that the prescriber has perished, records have been destroyed, and/or memories have faded. Defendants assert that the prior trend of pre-2002 cases indicates that 22% of the requested 100 cases will be susceptible to dismissal due to an inability to produce a prescribing physician for these reasons.

Again, because the Court finds that this discovery will advance the litigation, the parties are **ORDERED** to conduct the depositions of the prescribing physicians for all remaining pre-1996 label cases. (*See* Exhibit 3).

Both sets of depositions shall commence promptly following the completion of the second set of prescriber depositions. (*See* Doc. 653). But nothing precludes the parties from conducting any of the depositions earlier if mutually convenient. The parties shall have an additional 100 days to complete this third round of prescriber depositions.[1]

---

[1] For efficiency purposes and to avoid deposing the same doctor on multiple occasions, the parties shall conduct depositions for all siblings involved in the litigation when the prescribing physician is the same between those children identified in Exhibit 2 or Exhibit 3, and those remaining siblings not identified in Exhibits 2 or Exhibit 3.

To date the Court has Ordered approximately 250 depositions in this mass action. While additional depositions may appear taxing and burdensome on the parties, three points must be kept in mind. First, there are over 600 individual claims in this mass action. Each side clearly has a deep bench of personnel and wide pool of resources to draw from. Second, the parties both claim that there are no common issues of fact or law that unite any meaningful percentage of the docket.[2] If true, the Court is faced with over 600 individual cases and could simply set a pre-trial track for each case and authorize full discovery across the board. It is unlikely that anyone would favor such a drastic measure. Third, since implementing the prescriber depositions in July 2016, almost 12% of the total number of plaintiffs have been dismissed or withdrawn from the mass action. The Court is actively working on ways to bring as many cases to trial in 2017 as possible. In the interim, the practical reality of the mass action and the proven results in thinning the docket dictate that additional targeted discovery must continue.

**Unified Label List**

The Status Reports have indicated that there is substantial, though not total, agreement concerning the label changes that did not substantially alter the relevant warnings. Accordingly, the parties are **ORDERED** to file a unified list of labels where there is no substantial change to the relevant warnings. The parties are to file this list on or before **December 15, 2016**.

---

[2] The Court does not agree with this assessment. Both parties have been spectacular advocates for their positions. While recognizing the challenges in determining common questions of fact and law, it is the Court's view that the desire to obtain a tactical advantage at trial has precluded any genuine efforts by the parties to find common triable issues.

### Direct Ingestion Case

At the Status Conference the parties agreed that the direct ingestion Plaintiffs in Case No. 13-cv-686 are unrelated to the main Depakote mass action. Case No. 13-cv-686 presents the same subject matter jurisdiction problem as previously addressed by this Court's November 4, 2016 Order. (*See* Doc. 667) (addressing 10 cases where Plaintiffs assert facially incomplete diversity of citizenship as the basis for the Court's subject matter jurisdiction). The Complaint in Case No. 13-cv-686 asserts that "there is complete diversity of citizenship" despite the presence of Dexter Marshall[3] who "is a citizen and resident of Belleville, Illinois." Case No. 13-cv-686 (Doc. 2). Similar to the other mass action cases, each of the direct ingestion Plaintiffs has a distinct claim against Defendants. To preserve subject matter jurisdiction of the remaining cases, the Court *sua sponte* **DISMISSES without prejudice** the non-diverse Plaintiff, Dexter Marshall. The Clerk of Court is **DIRECTED** to provide a copy of this Order to Mr. Marshall's last known address: 1 Chelsea Drive, Apt. C, Fairview Heights, IL 62208. *See* Case No. 13-cv-686 (Doc. 11, at p. 2).

Concerning the remaining case of R.R. II, a minor, by Gloria Wright, individually as guardian and next friend of R.R. II, and Avis Stewart, both from Case No. 13-cv-686, the Clerk of Court is further **DIRECTED** to reassign that case at random from the regular civil assignment deck.

**IT IS SO ORDERED.**

**DATED: December 1, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

---

[3] Plaintiff Dexter Marshall has been proceeding *pro se* since 2014. *See* Case No. 13-cv-686 (Doc. 13).